THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR18-315RAJ |
| Plaintiff, | |
| v. | REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO UNSEAL DKT. 314 (*FRANKS* ORDER) AND DKT. 321 (PROBABLE CAUSE ORDER) |
| GIZACHEW WONDIE, | |
| Defendant. | |

Mr. Wondie, through counsel, moved to unseal two orders, Dkts. 314 (filed under seal) and 321 (filed under seal). The government acknowledges the applicable standard is that the public (which includes Mr. Wondie, his family, members of the bar, law students, and anyone else who would seek to review the Court's order) have a "common-law" right "to inspect and copy public records and documents." Dkt. 327, p. 2. The government acknowledges that under the First Amendment there is a strong presumption in favor of disclosure, a presumption that cannot be overcome unless there are "findings that closure is essential to preserve higher values and [the restriction] is narrowly tailored to serve that interest." *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1985); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *see also* Dkt. 327, p. 2.

The government, itself, has publicized almost all of the facts and information that they are now requesting be redacted from the Court's Orders. As a result, the claim that unsealing the unredacted Orders would cause harm to an investigation is untenable.

REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO UNSEAL DKT. 314 (FRANKS ORDER) AND DKT. 321 (PROBABLE CAUSE ORDER) (*Wondie*; CR18-315RAJ) - 1

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Because the government has not overcome the strong presumption in favor of unsealing the orders, the Court should unseal both orders in their entirety.

Mr. Wondie respectfully opposes any redactions to these orders outside of the acronyms agreed upon for the purposes of the public evidentiary hearings conducted on June 21 and June 22, 2021. Dkt. 303. The government repeatedly accused Mr. Wondie of being involved in a homicide in open court. The government repeatedly disclosed the very information it seeks to redact in these orders when levying those accusations. Neither the government nor any King County agencies requested that these facts and details be redacted or kept out of the public record when used against Mr. Wondie. And none of these parties has provided any reason to do so now.

I. **The Defense Disputes that it is Unwilling to Accommodate the King County Agencies' Privacy Concerns and the Record Shows Otherwise**

The King County Sheriff's office and the King County Prosecutor's office have filed declarations asking that both orders remain sealed in their entirety, or in the alternative, unsealed only as suggested by the redacted versions the government provided as exhibits to its filing. The government joins the alternative request. Without venturing into the details of the assertions in the declarations, the declarations contain inaccuracies.

Throughout this case, which went on for more than two years, defense counsel has agreed to numerous protective orders to secure the secrecy of the ongoing investigation cited to by the government and the King County agencies. *See* Dkts. 281, 184, 150, 3. The defense does not seek to have the pleadings or motions that contained reference to the protected discovery and documents in this case be unsealed, because many of the details and facts surrounding the investigation are contained within those documents. However, the Court's Orders do not contain such protected details or facts.

Throughout the two years this case was litigated, the government represented to defense counsel that the protective orders, the unique discovery process, and the breadth of the protected information was necessary to protect the ongoing King County

REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO UNSEAL DKT. 314 (FRANKS ORDER) AND DKT. 321 (PROBABLE CAUSE ORDER) (*Wondie*; CR18-315RAJ) - 2

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

investigation. Presumably, this representation was made with the knowledge of the King County agencies who were asserting the need for such privacy.

On December 21, 2020, defense counsel encouraged the government to keep the King County agencies apprised of the facts and circumstances of this case so that they had an opportunity to be heard on issues relating to the sensitivity, sealing and privacy interests involved in this case. *See* Dkt. 182-2 (E-mail) ("Please make sure to provide a copy to Mr. O'Toole and Detective Free. I will ask that the judge to give them the opportunity to be heard since they seem to be the driving force over the sensitivity of these items."). This email predated the public evidentiary hearings that were held on the same issues addressed in the Court's Orders.

As requested by the government, and with no opposition from the defense, the Court's Orders were made available to the county on July 7, 2021 including Ms. Decker who is no longer employed by the county.

## II. The Facts Sought to be Redacted are a Matter of Public Record, Having Been Made Public on Multiple Occasions by the Government.

In *United States v. Index Newspapers LLC,* 766 F.3d 1072 (9th Cir. 2014), the Court held "there is no substantial probability that disclosing the order holding Duran in contempt will jeopardize grand jury secrecy, and that redacting the remaining documents will adequately protect the government's compelling interest in maintaining the secrecy of the grand jury." *Id.* at 1085. In reaching this conclusion the Ninth Circuit did not "consider whether there is a separate common law right of access to [grand jury] documents because any such presumption in favor of access is outweighed by the compelling government interest in maintaining grand jury secrecy." *Id.*

Here there is no substantial probability that disclosing the orders in their entirety will hinder "the integrity of an open state homicide investigation," Dkt. 327, p. 1, because almost all the facts that the government and the King County agencies seek to redact have been made a matter of public record *by the government*. Additionally, because judicial orders, unlike grand jury proceedings, are not traditionally kept secret, both the common law right to access and the First Amendment support disclosing both

REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO UNSEAL DKT. 314 (FRANKS ORDER) AND DKT. 321 (PROBABLE CAUSE ORDER) (*Wondie*; CR18-315RAJ) - 3

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

orders in their entirety. The government's response does not attempt to meet either burden or test. *Index Newspapers LLC* at 1084-85 (describing both the First Amendment and the common law burden or test).

If the Court looks at the exact terms the government wants to redact and compares them with the government's own representations throughout this case, the Court will see that the terms were used by the government in publicly filed documents and in public proceedings.

On December 7, 2018, the government made the following representations as to the homicide:

> **B.   King County Sheriff's Office (KCSO) Investigation**
>
> 11.   On or about November 20, 2018, HSI special agents learned that WONDIE was being separately investigated by KCSO for a homicide. KCSO believed WONDIE was in possession of the murder weapon, which was a firearm registered to him.
>
> 12.   Based upon the initial investigation of WONDIE, officers believed that WONDIE was residing at an apartment in the Capitol Hill neighborhood of Seattle near Central College (hereinafter, the Capitol Hill apartment) and driving the Audi. KCSO detectives obtained state search warrants for the Capitol Hill apartment and the Audi to search for evidence of the murder.
>
> 13.   On or about December 6, 2018, HSI special agents participated in a joint operation with KCSO as they were intending to execute the search warrants.

Dkt. 1 (Complaint), p. 6.

On December 11, 2018, in front of Mr. Wondie's family and friends, the government made the following representations: "[A]s alleged in the complaint, the defendant was linked to an ongoing King County homicide investigation, and in connection with that investigation, on December 6th, HSI and the King County Sheriff's Office executed a search warrant on the defendant's vehicle, during which they found on the defendant's person distribution quantities of prescription pills and cocaine." Dkt. 37-1 (Bond Hearing Transcript) p. 6. The government continued:

REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO UNSEAL DKT. 314 (FRANKS ORDER) AND DKT. 321 (PROBABLE CAUSE ORDER) (*Wondie*; CR18-315RAJ) - 4

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

```
 9          I would just draw to the Court's attention with respect to
10     the use of a weapon charge from 2017, in April of 2017, this
11     defendant was stopped in connection with a report of a
12     brandishing of a firearm.  He was stopped in his vehicle.
13     At that time, law enforcement found and seized a firearm.
14     It was a .40 Smith and Wesson.  That gun was later
15     test-fired by law enforcement and entered in the NIBIN
16     system.  The gun was then subsequently returned to the
17     defendant.  But after that time, after the gun was returned
18     to the defendant, it was used in a homicide.  The defendant
19     claims now -- he's told law enforcement in his post-arrest
20     interview that it was stolen from him.  But, certainly, the
21     conduct is very serious in this case.
```

*Id.*, p. 8.

On December 26, 2018, in response to Mr. Wondie's request to modify his bond conditions, the government alleged as to the homicide, "In November 2018, HSI special agents learned that the King County Sheriff's Office ("KCSO") was also investigating the defendant in connection with a homicide….Specifically, KCSO detectives believed the defendant had possessed a weapon—a firearm registered to him—used in a murder…He also admitted that he had possessed the suspected murder weapon at one point in time, though he claimed the firearm was stolen from him and denied knowledge of the murder." Dkt. 18 (Government Opposition), p. 2.

The government argued as to these facts that "[t]he defendant has possessed a firearm used in a homicide under investigation by the King County Sheriff's Office. The defendant's connection to this weapon is simply further cause for concern regarding the serious danger the defendant poses to the community." *Id.*, p. 5. The Honorable James P. Donohue denied the request for modification, in part because "the

REPLY TO GOVERNMENT'S RESPONSE TO
MOTION TO UNSEAL DKT. 314 (FRANKS
ORDER) AND DKT. 321 (PROBABLE CAUSE
ORDER) (*Wondie*; CR18-315RAJ) - 5

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

defendant had been associated with a firearm that was allegedly stolen from him, and used in a subsequent homicide." Dkt. 20 (Order), p. 1-2.

On April 9, 2019, a second bond hearing was held where Mr. Wondie again requested to modify his bond conditions. Dkt. 37-2 (Second Bond Hearing Transcript). At that hearing, the government stated: "Just by way of background, as the Court may already be aware, last fall this defendant was the target of an HSI drug investigation. He was simultaneously being investigated by the King County Sheriff's Office in connection with a weapon that the defendant had at one point possessed, which was used in a murder." *Id.*, p. 11.

On November 12, 2019, in response to Mr. Wondie's third request to modify his bond conditions, the government alleged as to the homicide: "In November 2018, HSI special agents learned that the King County Sheriff's Office ('KCSO') was also investigating the defendant in connection with a homicide. Specifically, KCSO detectives believed the defendant had possessed a weapon—a firearm registered to him—used in a murder." Dkt. 36, (Government Opposition), p. 2.

The government argued, "And the defendant also possessed a firearm that KCSO, relying upon a NIBIN lead, believe was used in a 2018 homicide…Even assuming the defendant had no knowledge of or involvement [in the homicide], these facts evidence extreme recklessness on the defendant's part with regard to the weapons that come through his hands." *Id.*, p. 6. The NIBIN lead referenced three events. Dkt. 37-4 (NIBIN Lead). The first event was April 7, 2017, when the firearm was seized and described as a .40 caliber Smith and Wesson, Serial Number MRN7255, test fired, and returned to Mr. Wondie. *Id.* The second event was May 28, 2018, where there was property damage with evidence described as "40 S&W." *Id.* The third event, dated September 19, 2018, is described as "HOMICIDE/MURDER," and the exhibit is "10." *Id.* The case number for the homicide/murder is also described. *Id.* The lead was generated by Seattle Police officer Kevin Jones and Bureau of Alcohol, Tobacco, and Firearm analyst Sam Gonzales. *Id.* At the hearing on the motion, the government opposed modification, arguing:

REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO UNSEAL DKT. 314 (FRANKS ORDER) AND DKT. 321 (PROBABLE CAUSE ORDER) (*Wondie*; CR18-315RAJ) - 6

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

> The three-step process that was just laid out here in the report cited by the defendant is exactly what happened in this case with respect to not one but two firearms associated with the defendant. First, the NIBIN network software generated a list of potential matches described in this report cited by the defendant as having a very high level of accuracy between the shell casings from the firearm used to kill an individual named Amarah Riley in Seattle in September 2018 to the shell casings from a firearm discharged at a nonfatal shooting earlier, again in Seattle, in May 2018, to the shell casings from a firearm seized from the defendant in Seattle, test-fired and then returned to the defendant in Seattle in July 2017. Two trained specialists then examined these digital image correlations and after that review provided the NIBIN leads to law enforcement. So, again, Your Honor, a first specialist reviewed the matches that were provided by the computer system, and then that specialist's work was reviewed by a peer before the NIBIN lead was generated. So that's the 40 Smith and Wesson in this case that has not yet been recovered but that is associated with the defendant...
>
> …This case -- because the firearm, the 40 Smith and Wesson firearm, was seized from the defendant in July 2017 after a complaint was called in regarding an individual who had brandished a firearm in Capitol Hill. Seattle Police Department responded. They found the defendant with the firearm. They took the firearm from him at that time. After they took the firearm in July 2017, they test-fired it and they entered the results into NIBIN. No charges were pursued in that case so the firearm was returned to the defendant, again, around that time…
>
> …It's linked to two shootings. There are NIBIN connections linking it to the -- a murder in September of 2018 in Seattle and also to a firearm that was discharged at a nonfatal shooting in Seattle in May 2018. That's the 40 Smith and Wesson.

Dkt. 40, p. 12-13.[1]

On January 7, 2020, in a response to a motion to suppress, the government stated:

> While the firearm was in the custody of the Seattle Police Department, it was test-fired, then returned to the defendant on or about July 18, 2017.

---

[1] The reports and the corresponding NIBIN lead were filed on the public docket in connection with a motion to suppress evidence and the government never moved to have those documents sealed. Dkt. 49, 49-1 through 49-4.

REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO UNSEAL DKT. 314 (FRANKS ORDER) AND DKT. 321 (PROBABLE CAUSE ORDER) (*Wondie*; CR18-315RAJ) - 7

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

> The shell casing from the test-fire was retained, however, and it was later analyzed by the Integrated Ballistic Information System (IBIS), a piece of equipment that takes high-definition photographs of the unique markings on a fired casing. That data was then submitted to the National Integrated Ballistic Information System, a database of shell casings obtained from crime scenes and test-fires. Many months later, shell casings from a homicide and a completely separate shots-fired incident in Seattle were recovered and also entered into NIBIN. The casings from those two incidents were matched to the casing from the test-fire of the defendant's gun. That match formed the basis of an application for a search warrant for the defendant, his car, and his apartments, which ultimately resulted in recovery of the evidence for which the defendant is charged today.

Dkt. 70 (Response to Motion to Suppress), p. 2-3.

On January 20, 2020, during a motion to compel hearing, the government referenced the homicide and argued to the Court:

> In terms of actual request, I think we're here to talk about the first request that the defense made in the motion to compel, and that relates to the entire murder file --- from the underlying investigation into the murder of Amarah Riley. We certainly oppose the request for unfettered access to the communications of every investigator or attorney who has touched this case over the course of the last one and a half years…
>
> Well, we don't think it's necessary to review in camera. We oppose, for, I think, obvious law-enforcement-sensitive reasons, sharing it with the defense, but as a practical matter, it's not even -- these aren't emails that are in our possession currently, as I'm sure you're aware. Going out and collecting -- attempting to fashion search terms that would allow us to capture all of the communications from anybody who's had any involvement with the investigation into the death of Amarah Riley, which began in September of 2018. The search warrants in this case that are the subject of the Franks motion were filed -- were signed and executed in early December 2018. So this investigation into the murder has been going on for a full year-plus since that time.

Dkt. 104, p. 9-10 (Motion to Compel Hearing). The Court provided the parties "seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript" but the government did not file a notice. *Id.*

REPLY TO GOVERNMENT'S RESPONSE TO
MOTION TO UNSEAL DKT. 314 (FRANKS
ORDER) AND DKT. 321 (PROBABLE CAUSE
ORDER) (*Wondie*; CR18-315RAJ) - 8

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

On February 12, 2021, the government stated in response to a motion to suppress, "At the same time as these two ongoing drug investigations, King County Sheriff Detectives Kathleen Decker and John Free were investigating a homicide that had occurred on September 19, 2018. As discussed at more length elsewhere, e.g., Dkt. 73, shell casings were collected at the scene, and one was imaged and uploaded into the NIBIN system. Later, the detectives were notified that NIBIN linked the gun used in the homicide both to a shots-fired incident in Seattle a few months prior and to a firearm that SPD had seized from the defendant in April 2017 and then returned to him in July 2017." Dkt. 208 (Response to Motion to Suppress), p. 3.

The Court held public hearings on two motions that referenced both public and protected information. Dkts. 295, 296, 315, 316. The parties agreed to using coded names to protect information relating to the open investigation. Dkt. 303. The hearings were open to the public and, in fact, the public attended both hearings, in the courtroom and via telephone. Without venturing into the details of the testimony and the evidence, the Court heard extensive testimony and reviewed evidence with respect to the terms the government wants to redact.

After the hearings and upon request that the transcripts be prepared, the Court ordered that the "[p]arties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript." The government did not seek to redact or strike any terms from the record. Dkt. 327, p. 6.

Virtually all the terms that the government seeks to redact have been part of the government's own record. The public, Mr. Wondie's family, his community, law students, and members of the bar have a right to know the truth in its entirety. That truth is captured in the Court's orders, while maintaining the secrecy of the information and facts that are protected by the Court's previous protective orders in this case. Either everything or nearly everything the government seeks redacted is part of the public records, which means that no legitimate interests are served by the redaction.

//

REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO UNSEAL DKT. 314 (FRANKS ORDER) AND DKT. 321 (PROBABLE CAUSE ORDER) (*Wondie*; CR18-315RAJ) - 9

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

1 | DATED this 17th day of September, 2021.

2 | Respectfully submitted,

3 | s/ *Mohammad Ali Hamoudi*
4 | s/ *Sara Brin*
  | Assistant Federal Public Defenders
5 | Attorneys for Gizachew Wondie

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO UNSEAL DKT. 314 (FRANKS ORDER) AND DKT. 321 (PROBABLE CAUSE ORDER) (*Wondie*; CR18-315RAJ) - 10

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100