The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>GIZACHEW WONDIE,<br><br>　　　　　　　Defendant. | NO. CR18-315 RAJ<br><br>ORDER ON DEFENDANT'S<br>*FRANKS* MOTION |

## I. INTRODUCTION

THIS MATTER has come before the Court upon defendant Gizachew Wondie's motion seeking a finding that his constitutional rights were violated by Detective Kathleen Decker's actions in seeking a warrant. Dkt. 54. The relief sought is suppression of the evidence and fruits obtained from the issuance of the subject warrant. Having considered the government's response, Dkt. 73, the defendant's reply, Dkt. 197, the files, pleadings herein, and testimony elicited during the *Franks* hearing conducted on June 21 and 22, 2021, the Court **GRANTS** the motion.

## II. DISCUSSION

The defendant sought a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Dkt. 54. This Court granted that motion (Dkt. 273), and the hearing was held and testimony taken on June 21 and 22, 2021. As noted in the Court's Order permitting

the hearing, the defendant asserts there are four bases to support his requested relief and the Court will address each in turn.

> 1. Detective Decker lied when she alleged a shell casing recovered from the scene of a homicide matched a gun known to be owned by the defendant, and further lied when she claimed she knew he had possession of that gun.
> 2. Detective Decker lied when she asserted that an African American male holding a gun in an Instagram photograph was the defendant.
> 3. Detective Decker lied when she claimed the defendant had a propensity for violence; and
> 4. Detective Decker omitted material facts when detailing the defendant's prior arrest record.

In support of his motion, the defendant cites *United States v Perkins*, 850 F.3d 1009 (9th Cir. 2017) as reference for the standard this Court should apply in determining the existence of probable cause. The Court agrees. *Perkins* states that:

> Under the first step of *Franks*, defendant must show by a preponderance of the evidence that the affiant knowingly and intentionally, or with reckless disregard for the truth, made false and misleading statements or omissions in support of the warrant application. *Martinez-Garcia*, 397 F3d at 1214. A negligent or innocent mistake does not warrant suppression. *Franks,* 438 U.S. at 171. "[A] warrant affidavit must set forth particular facts and circumstances…so as to allow the magistrate to make an *independent* evaluation of the matter." *Id.* at 165 (emphasis added). "Sufficient information must be presented to the magistrate to allow the official to determine probable cause; his actions cannot be a mere ratification of the bare conclusions of others." *Illinois v. Gates*, 462 U.S., at 239. An officer presenting a search warrant application has a duty to provide in good faith, all relevant information to the magistrate. *United States v. Hill,* 459 F.3d 966, 971 n.6 (9th Cir. 2006).

///
///
///

ORDER ON DEFENDANT'S *FRANKS* MOTION - 2
*United States v. Wondie*, CR18-315 RAJ

A. <u>Detective Decker's representations that Mr. Wondie's firearm matched the shell casing recovered from the scene of a homicide.</u>

Detective Decker joined the King County Sheriff's Office as a deputy in 1985. After several years she rose to the rank of detective and has 17 years' experience with the Major Crimes Unit. She has vast experience investigating many crime scenes related to serious felonies including robbery, assault and homicide. Her experience includes providing training to law enforcement personnel on investigative techniques. Her years of experience also include having worked with the Washington State Patrol Crime Lab.

On ▉▉▉▉▉▉, 2018, she began her investigation as lead detective regarding the homicide of ▉▉▉▉▉▉▉▉. When called to the crime scene she was advised that ▉▉▉▉ caliber shell casings had been recovered. On the following day an examiner from the Washington State Patrol Crime Lab entered the casings into the National Integrated Ballistic Information Network (NIBIN). Detective Decker was aware that she needed to submit a NIBIN lead for verification with the lab before going to trial. Detective Decker contends it was her understanding that she did not need to secure a NIBIN lead verified for the purposes of a warrant.

On September 25, 2018, the WSP generated a presumptive investigation lead for the casings recovered from the ▉▉▉ murder scene. That report states:

> ∗∗∗THIS IS NOT A REPORT∗∗∗ THIS IS A NOTIFICATION OF A PRESUMPTIVE INVESTIGATIVE LEAD(S) FROM ENTRY INTO THE NIBIN SYSTEM. EVIDENCE MAY BE CONFIRMED BY MICROSCOPIC COMPARISON WHEN REQUESTED. FOR A FORMAL REPORT, PLEASE SUBMIT COMPLETED REQUEST FOR LABORATORY EXAMINATION TO THE WASHINGTON STATE PATROL CRIME LABORATORY FIREARMS UNIT REQUESTING IBIS LEAD CONFIRMATION. Ex. 135.

Detective Decker admitted she is not a firearms examiner. She also admitted she received a document dated September 25, 2018, that was sent to her by Samuel Gonzalez wherein he indicated that "If a microscopic confirmation is required for warrants, arrests,

et. cetera, please contact the WSP crime lab." Ex. 135.  In a separate email from Jennifer Tardiff with the WSP crime lab (Ex. 136-17) she used the same language.  In another communication from another case in 2017, Jennifer Desrosier, a firearm and toolmark lab technician from the WSP, used the same language offering Detective Decker the opportunity to have the casings confirmed microscopically.  Ex. 136-23.  There, Ms. Derosier was advising the detective that the test fires did not result in a hit on anything. Ex. 136-24. All of these communications with Detective Decker occurred before she applied for the December 4, 2018 search.

There were two presumptive leads detailed in the NIBIN report.  The first, at best, suggested similarities between the shell casings recovered from the ▮ homicide scene and shell casings from the test fire of a ▮ caliber Smith & Wesson that was seized from the defendant on April 17, 2017.  The second suggested similarities between shell casings recovered from the ▮ scene and shell casings from a shooting incident on ▮, 2018.

The NIBIN reports, now a matter of record, on their face are unequivocal in their absence of an affirmation or representation that Detective Decker had any <u>matching</u> evidence of the defendant's firearm to any shootings.

In addition, in 2017, Detective Decker sent an email expressing her interest in seeking a NIBIN evaluation linking the shell casings from the scene to the pistol, and then the pistol to any other unsolved shootings.  Ex. 136-28.

Despite the absence of a WSP confirmation on a lead and the prior admonishments regarding NIBIN leads, and her request for linkage of the casings to the firearm, Detective Decker affirmatively stated as such in her search warrant affidavit to search the defendant's car and apartment for what she claimed was the same firearm used to kill ▮.  Ex. 136-6.  In addition, she specifically stated that "[f]orensic examination *has established* that shell casings recovered from the scene *matched* a gun known to be owned [by Mr. Wondie]." Ex. 134-5.

ORDER ON DEFENDANT'S *FRANKS* MOTION - 4
*United States v. Wondie*, CR18-315 RAJ

Detective Decker's affirmation of a match in the search warrant affidavit was not isolated. She repeated this claim in the affidavit contending, "[d]etectives learned through NIBIN testing [that] the firearm used to shoot and kill ▮▮▮▮ was the same firearm linked to two Seattle Police Cases." Ex. 134-6. A simple review of the NIBIN clearly demonstrates that these reports do not establish any match or conclude that the shell casings detailed in the report came from "the same firearm." Detective Decker's sworn declaration to Judge Richardson about the conclusiveness of her representation was false and reckless. A detective with 17 years of experience had to know the powerful impact of her words and that they needed to be accurate and without deception. Any reasonable judge reading the affidavit would immediately conclude that the firearm Detective Decker was referencing matched that which was used in a homicide and other shootings. This statement was clearly material to the issuance of the search warrant because it represented that the shell casing from a homicide matched a gun allegedly belonging to the defendant. Detective Decker could not conclude anything in the NIBIN database regarding the firearm used in the ▮▮▮ murder as it related to the shell casing already in the NIBIN database. This was reckless at minimum and intentional at best.

Detective Decker was on notice of the limitations on the use of NIBIN leads. Those precise documents instruct the reader that NIBIN leads cannot be used for the establishment of probable cause or for any court-related purpose until evidence has been confirmed by a microscopic comparison. Exs. 75-2, 135-1, 136-3, 4, 6, 11,16, 17-21, 25-27. In addition, Detective Decker was specifically advised by Analyst Samuel Gonzalez that if she wanted to use it (NIBIB Hit) for an arrest or warrant she needed to contact the Washington State Patrol Crime Lab. Ex. 136-2. These notifications on their limited use without confirmation were provided to Detective Decker on multiple occasions.

When confronted about the falsity of her statement, she initially claimed she had a "mixed understanding" [about NIBIN]. Yet when she authored an email in 2017, before the search warrant application, she noted: "We are interested in linking the shell casings from the scene to the pistol and then the pistol to any other unsolved shootings." Ex.

136-28. This document demonstrates Detective Decker's claimed "mixed understanding" about the significance of the NIBIN link limitations to be more than suspect and far from credible.

Detective Decker eventually admitted on examination that her statement in the affidavit was not true. The Court concludes, under these circumstances, the detective was aware of the difference and her conduct was reckless in ignoring its significance. She had an affirmative duty to provide all the relevant NIBIN information she possessed, and she chose not to do so. She could easily have clarified for Judge Richardson the limitations of the NIBIN evidence. Instead, she provided in the affidavit summary that: "Forensic examination that shell casings recovered from the scene *matched* (emphasis added) a gun known to be owned by Gizachew Wondie." Ex. 134-5. She affirmed this summary with detail that: "Detectives learned through NIBIN testing the firearm used to shoot and kill ▮▮▮▮▮ was the *same* (emphasis added) firearm linked to two Seattle police cases." Ex. 134-6

These statements contain far more egregious representations than to be classified as mere negligence. These statements deprived Judge Richardson of the opportunity to make an independent evaluation of the facts presented.

The Court has considered Mr. Nodel's testimony and finds it unpersuasive. While the terms "hit" and "match" may be used in describing the association set forth in a NIBIN lead notification, that should not be the standard for a seasoned detective making affirmative statements in a search warrant in a Murder in the First Degree investigation. While the interchange of these terms may be acceptable in common parlance among law enforcement officials, Detective Decker was unequivocal in making the direct link of the shell casing to a gun known to belong to Mr. Wondie. If she was uncertain about the application of NIBIN links, she could have clarified this in the affidavit. The remedy for her misrepresentation is not corrected by her after-the-fact admission that she made a mistake. That mistake is the center-point and unmistakable connection of Mr. Wondie to ▮▮▮▮▮ death. This finding alone is sufficient to grant the defendant's motion and

1 assertion that Detective Decker's affidavit contained materially false and misleading
2 information that was recklessly communicated to Judge Richardson.
3   The Court has considered the government's defense against a reckless finding
4 noting that it was King County Senior Deputy Prosecuting Attorney Brian McDonald
5 who added the sentence referencing the "matched" language to the draft affidavit. Dkt.
6 73, at 14.  Assuming this to be accurate, Brian McDonald did not sign the affidavit and
7 attest that he was signing under penalty of perjury that the contents of the affidavit were
8 true and correct.  Detective Decker did, and that addition was not true or correct.  As
9 noted by the government, the affiant is ultimately responsible for the affidavit's contents.
10   B.   Detective Decker's representation that Mr. Wondie was associated with the
11        ▆▆▆▆▆▆ and was in possession of the murder weapon.
12   When Detective Decker submitted her search warrant affidavit, she incorporated
13 by reference a search warrant (18-S-1161-A) that had requested content from various
14 social media platforms.  That warrant was dated October 2, 2018.  That warrant in turn
15 incorporated by reference an earlier warrant dated September 25, 2018.  The later warrant
16 was not executed because the social media company responded that the warrant was not
17 specific enough.  Dkt. 54, 7.
18   These warrants were incorporated with the search warrant in this case to support
19 Detective Decker's warrant to search Mr. Wondie's vehicle and residence.  In her
20 application Detective Decker represented that an Instagram photograph associated with
21 the ▆▆▆▆▆▆, depicting a group of African American males, showed Mr. Wondie
22 holding a firearm. She also stated the photograph was posted eight days after the ▆▆
23 murder and she represented the male holding the weapon to be Mr. Wondie.  Her
24 affirmation included that the firearm was consistent with a ▆ caliber semi-automatic
25 weapon and was the same type used to kill ▆▆▆▆▆▆.  Ex. 134-10.
26   In her search warrant affidavit, she provided limited and conclusory statements
27 supporting her identification of Mr. Wondie.  She stated she had located an Instagram
28 photograph associated to "▆▆▆▆▆" who had the same facial features and hairstyle as

ORDER ON DEFENDANT'S *FRANKS* MOTION - 7
*United States v. Wondie*, CR18-315 RAJ

1  Mr. Wondie, included a booking photograph, and concluded that she believed the male
2  shown second from the left in the back to be Mr. Wondie.

3      The Court agrees with the defendant.  The detective engaged in a pattern of
4  recklessness in her identification that far exceeds an excusable case of mistaken
5  identification.  This Court is mindful of the authority that failure to investigate fully is not
6  evidence of an affiant's reckless disregard for the truth.  *United States v. Huggins,* 299
7  F.3d 1039 (9th Cir. 2012).  The detective's conclusion that the male holding the gun had
8  the same facial features and hairstyle as the defendant is perplexing.  The Court has
9  inspected the same photographs and concludes that perhaps racial stereotyping was
10 involved in the detective's conclusion, but certainly should not serve as the basis for her
11 identification.  The Court understands that the same photographs were presented to Judge
12 Richardson for her to make her own assessment if the comparisons were appropriate.
13 This insulates Detective Decker's actions to some extent.  But what Detective Decker did
14 not do was to present sufficient information to Judge Richardson to allow her to make a
15 neutral determination of probable cause.  Moreover, the detective failed to provide all of
16 the relevant information she possessed and, in this case, chose to ignore.

17     The facts of the affidavit reflect Detective Decker's selective and unfair
18 identification of gang association which clearly misled Judge Richardson's warrant
19 approval.  As noted by the defense:

    1.    She withheld the fact she interviewed Individual 5 and withheld he denied being a member of a gang and failed to advise the judge she interviewed him;

    2.    She falsely connected Individual 4 with Group C when law enforcement had affirmatively informed her that he was a member of Group B;

    3.    She associated Mr. Wondie with Group A under her theory that Group A had a conflict with Group B resulting in ▬▬▬▬ death. This was done despite Agent Wozniak, who was investigating these gangs, did not know Mr. Wondie; and

4.  At least three Seattle Police Department officers responded to a request about whether Mr. Wondie was associated with gangs, and no one responded that he was associated with gangs.

Detective Decker's submission to Judge Richardson cast the defendant having a tie to Group A. Judge Richardson had previously signed two separate warrants for Groups A, B and C. Detective Decker's submission lacked the detail for Judge Richardson to make a neutral decision about the evidence supporting the existence of probable cause. Rather, she provided a booking photo of Mr. Wondie and suggested he was the individual in an Instagram photo, tied to a gang, holding a gun consistent with the type of weapon used in the killing of ▮ ▮, and noting the Instagram photograph was posted just 8 days after her murder.

Detective Decker provided her version of identification and ignored the multiple resources available to her before she submitted her search warrant affidavit and certainly before she began making identifications under oath. The defendant's assertion of recklessness on this point is somewhat mitigated by the fact that she did consult with an ATF agent about the photograph. However, the evidence presented at the *Franks* hearing confirmed she had no personal interactions with Mr. Wondie before his arrest, she had access to a gang database (GETEM) and failed to take advantage of it, and otherwise failed to access social media intelligence that was otherwise readily available to assist her in making an accurate comparison of images. This observation is borne out through the testimony of Mr. Stortini that rudimentary investigation into the photo was not undertaken. Detective Decker was free to have her perception of the facts, but she also had an obligation to present appropriate detail to Judge Richardson to avoid misleading her.

Further evidence of the detective's misleading affidavit is reflected in the information she withheld regarding circumstances surrounding another suspect involving a ▮ caliber firearm and the absence of a nexus to Mr. Wondie in a shooting at a moving vehicle, similar to ▮ ▮ homicide.

ORDER ON DEFENDANT'S *FRANKS* MOTION - 9
*United States v. Wondie*, CR18-315 RAJ

In total, Detective Decker's submitted identification to the judge was misleading and undertaken with reckless disregard for the truth. The facts she claimed on critical issues were misleading and the facts she withheld were material to a determination of probable cause.

C. <u>Detective Decker's representation that the defendant had a propensity for violence.</u>

In the search warrant affidavit, Detective Decker affirmatively represented that she had been "advised [by another officer] that he was aware that [Mr. Wondie] was armed with a gun and that he was aware of his propensity for violence." Ex. 134-11. This statement was false and demonstrates her reckless disregard for the truth or the impact that her communications would have upon Judge Richardson's neutral and detached determination of probable cause.

Upon examination in the *Franks* hearing, Detective Decker acknowledged she falsely represented Mr. Wondie had a propensity for violence. Her source for this information came from Officer Averett. Detective Decker ultimately admitted that Officer Decker had only reported a "potential for violence" and she "didn't know why" she wrote otherwise in her affidavit.

Dictionary definitions of propensity and potential demonstrate the stark contrasts in meaning. Propensity is defined as an often-intense natural inclination or preference. Potential is defined as having or showing the capacity to become or develop into something in the future. *See Merriam-Webster.com Dictionary*. The detective's mixing of these two descriptions of the defendant was significant. The obvious effect of Detective Decker's mixing of these terms was essentially telling Judge Richardson that an officer who claimed he knew Mr. Wondie from several police contacts, one of which was recent, stated "he was aware of his prior arrests and *propensity* for violence." (Emphasis added).

The evidence confirms that Detective Decker did not subjectively believe Mr. Wondie was violent. Detective Decker's Search Warrant Risk Analysis Checklist

ORDER ON DEFENDANT'S *FRANKS* MOTION - 10
*United States v. Wondie*, CR18-315 RAJ

supports this conclusion. Dkt. 190, Ex. 1.  When asked if she had reason to suspect the suspect [Mr. Wondie] will be violent, she answered "No."  Dkt. 197 at 22.  This was no mere checklist, rather, it was a document prepared by the detective to note any concern for violence to ensure the safety of her fellow law enforcement officers when contacting the defendant.  Detective Decker's characterization of the defendant's "propensity" was grossly misleading.  If this mixing of terms was an isolated event, her conduct could be construed at best as mere negligence or a mistake.  However, her misrepresentations were many.

Further problematic is Detective Decker's reference to Mr. Wondie's criminal history.  Detective Decker represented to Judge Richardson the knowledge she possessed about the defendant which included her possession of his criminal history.  Consequently, she knew he had no prior convictions involving crimes of violence and the one allegation that he had "brandish[ed] a gun" had not been corroborated by a witness to the incident.  Moreover, Detective Decker was aware that case had been dismissed with prejudice.  None of these facts were communicated in the affidavit, all of which bolstered the "propensity to violence" image she had falsely and recklessly communicated to Judge Richardson.

### III.  CONCLUSION

In total, Detective Decker conveyed to Judge Richardson false identification of the defendant with a firearm, characterization of him as having a tendency to be violent, and having possession of a firearm conclusively linked to a homicide.  The Court concludes Detective Decker's noted statements in the affidavit can only be reasonably construed as reckless conduct, if not intentional acts.  This is particularly so for a 33-year veteran detective working in Major Crimes, investigating homicide, robbery, and felony assault cases.  Detective Decker was seeking a search warrant for evidence of the crime of Murder in the First Degree.  Her attention to accuracy and truth should have been paramount, but that was not the case in the affidavit she submitted.

As noted above, an officer presenting a search warrant application has a duty to produce, in good faith, all relevant information to the reviewing judge. Detective Decker recklessly provided false information and omitted information from the affidavit that resulted in misleading information being communicated to Judge Richardson.

The Court concludes that by removing the falsehoods concerning the firearms evidence, misidentification of the Instagram photograph, misrepresentations about the defendant's tendency to violence, and the other omissions above, the warrant fails for lack of probable cause. The Court therefore **GRANTS** the defendant's motion.

DATED this 2nd day of July, 2021.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge